```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
```

| | |
|---|---|
| **ELISSA SUE MYERS,** | * |
| Plaintiff, | * |
| v. | *   Civil Action No. BPG-09-1647 |
| **MICHAEL J. ASTRUE,** | * |
| **Commissioner of** | |
| **Social Security,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff, Elissa Sue Myers, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 13, 17.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (Paper No. 13), and grants defendant's Motion for Summary Judgment (Paper No. 17).

I.  **Background**

Plaintiff filed for a period of disability, DIB, and SSI on May 15, 2006 alleging that she became disabled on March 23, 2006 due to a "neurological impairment and learning disability." (R. at 123.) Her applications were denied initially and on reconsideration. (R. at 51-55, 63-64.) On July 9, 2008, plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Larry Banks. (R. at 10-19.) Also testifying was a qualified vocational expert. (R. at 18-19.)

In a decision dated August 13, 2008, the ALJ denied plaintiff's application for benefits. (R. at 18-20.) On April 24, 2009, the Appeals Council held that there was no basis for granting review of the ALJ's decision. (R. at 1-5.) Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits he has requested. (Paper Nos. 1, 13.) In the alternative, plaintiff asks this court to remand the matter for further proceedings. (Id.)

II. **Standard of Review**

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which

"a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments ("Listings"). If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

3

> (5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

## III. Discussion

In his decision, ALJ Banks found, at step one, that plaintiff is not engaged in substantial gainful activity. (R. at 12.) While he determined, at step two, that plaintiff suffers from a severe combination of "borderline intellectual functioning," "learning disability," and "depression," he concluded, at step three, that these impairments do not individually or collectively rise to the level of any of the impairments in the Listings. (R. at 12-15.) In addition, while the ALJ found, at step four, that plaintiff does not retain the RFC for PRW, he concluded, at step five, that plaintiff is capable of performing work that is available in the national economy based on her RFC, age, education, and past work experience. (R. at 15-18.) Accordingly, the ALJ concluded that plaintiff is not disabled for the purposes of awarding benefits. (R. at 19-20.)

Plaintiff's primary challenge on appeal is that the ALJ erred in concluding that plaintiff retains the RFC to:

4

> perform a full range of work at all exertional levels
> but with the following nonexertional limitations:
> moderate difficulties in social functioning and
> moderate difficulties in concentration, persistence or
> pace resulting in a limitation to the performance of
> simple, routine unskilled tasks with no more than
> minimal contact with coworkers, supervisors or the
> public.

(R. at 15.)

Specifically, plaintiff argues that the ALJ erred by improperly rejecting the opinions of plaintiff's examining physicians, Myron Hafetz, Ph.D., Mehul Mankad, M.D., and Karen McGibbon, M.D., that plaintiff has "<u>extreme difficulties</u> in maintaining social functioning and constant difficulties in maintaining concentration[,] persistence[,] or pace." (Paper No. 13-1 at 7 (emphasis in original).) According to plaintiff, these opinions would "support a conclusion of disabled without qualification." (<u>Id.</u>)

The determination of RFC is a function-by-function assessment, based upon all of the relevant evidence, of what work-related activities a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling ("SSR") 96-8P. "[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments" and provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR

5

96-8p; see Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (ALJ must evaluate the effect of all of plaintiff's impairments and adequately explain his RFC findings). Like all aspects of the ALJ's opinion, the ALJ's RFC determination must be supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

When a claimant suffers from mental impairments, the ALJ must determine the ability of the claimant to adapt to the demands or stress of the workplace. SSR 85-15. Thus, in determining a claimant's RFC, the ALJ must account for factors such as the claimant's ability to understand, remember, and carry out instructions, and respond appropriately to supervision, coworkers, and work pressures. 20 C.F.R. §§ 404.1545(c), 416.945(c). A finding that a claimant has sustained "substantial loss of ability" to meet the "basic mental demands of competitive, remunerative, unskilled work includ[ing] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" ordinarily "justif[ies] a finding of disability." SSR 85-15.

In evaluating medical evidence as part of their RFC analysis, the ALJ shall "generally" give more weight to the opinion of an examining source than a non-examining source. 20

C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  Further, an ALJ must give a "treating physician's" opinion controlling weight as to the nature and severity of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ must also "give good reasons . . . for the weight . . . give[n] [to a claimant's] treating source's opinions."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  A physician is considered a "treating physician" if they "ha[ve], or ha[ve] had, an ongoing relationship with the [claimant]." 20 C.F.R. §§ 404.1502, 416.902.

If the ALJ determines that the treating physician's opinion is not entitled to controlling weight, the ALJ shall evaluate the opinion as though they would evaluate any other medical opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  In so doing, the ALJ shall consider factors such as: (1) the nature of the patient-doctor relationship; (2) the frequency of examination; (3) consistency with the entire record; and (4) the specialization of the doctor.  20 C.F.R. §§ 404.1527(d), 416.927(d).  With respect to the opinions of non-examining state agency physicians, ALJs are not bound by their findings, but may not ignore these opinions and must explain the weight given to these opinions.  20 C.F.R. §§ 404.1527(f), 416.927(f).

Contrary to plaintiff's assertion, the ALJ adequately explained his conclusions that plaintiff's examining physicians' opinions are entitled to little or no weight and the ALJ's conclusions in this respect are supported by substantial evidence. In particular, as the ALJ explained, plaintiff's examining physicians' opinions are inconsistent with other substantial evidence in the record.

Specifically, Dr. Hafetz, a Maryland Department of Disability Services ("DDS") psychiatrist who performed a consultative examination on July 16, 2006, opined that plaintiff cannot engage in any work without the assistance of an agency providing a job coach, support, guidance and general monitoring. (R. at 173.) As the ALJ explained, however, this opinion is inconsistent with evidence that plaintiff worked at a bakery for eight years and as a horse groomer for 13 years without a job coach or any other assistance. (R. at 17); see Craig v. Chater, 76 F.3d 590, 596 n.7 (4th Cir. 1996) (claimant cannot be found disabled if claimant worked many years with symptoms and there was no significant deterioration in condition after claimant stopped working); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) (same); cf. Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) (without any evidence of change in claimant's intellectual functioning, court assumed claimant's IQ remained relatively constant over period of several years).

Dr. Mankad, a psychiatrist who performed an evaluation of plaintiff at the request of plaintiff's attorney on March 10, 2008, opined that plaintiff needs a supportive living situation and is unable to manage many independent tasks. (R. at 211-13.) This opinion, however, is not credible where, as the ALJ explained, plaintiff repeatedly reported that she could perform many daily activities independently, such as driving, grocery shopping, cleaning, and preparing meals. (R. at 17); see, e.g., Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007) (ALJ may reject conclusions of any medical expert if they are inconsistent with the record as a whole); Stanley v. Barnhart, 116 Fed. App'x. 427, 428-29 (4th Cir. 2004) (ALJ properly discredited claimant's medical assessments based solely on claimant's subjective reports of emotional impairment where "bulk of evidence indicated that [claimant's] daily life activities were not affected to the extent she alleged"). Additionally, as the ALJ noted, Dr. Mankad's report is "an attorney generated psychiatric report," which indicates the limited nature of plaintiff's relationship with this physician and further supports the ALJ's conclusion that his opinion is not credible. (R. at 17.)

Finally, as the ALJ explained, Dr. McGibbon's opinion that plaintiff experienced "continual episodes of decompensation" and has extreme limitations in social interaction is directly contradicted by the absence of any evidence in the record of

9

episodes of decompensation and plaintiff's own statements that she generally gets along with people. (R. at 17-18.) In addition, as the ALJ noted, Dr. McGibbon provided no explanation for her conclusions and is not a specialist in mental health, which further undercuts the credibility of her opinion. (Id.)[1]

Thus, the ALJ's conclusion that plaintiff's examining physicians' opinions are entitled to little or no weight is supported by substantial evidence. This conclusion, however, does not end the court's analysis since the court must also determine whether the ALJ's ultimate conclusion that plaintiff retains the RFC to perform "routine unskilled tasks" so long as she is limited to "no more than minimal contact with coworkers, supervisors, or the public" is supported by substantial evidence.

The court concludes that it is. In particular, the ALJ relied on the findings of Patrick Sokas, M.D., a Maryland Department of Disability Services ("DDS") psychiatrist, who

---

[1] In their motions, the parties dispute whether Drs. Mankad and McGibbon are plaintiff's "treating physicians." (Compare Paper No. 13-1 at 7 with Paper No. 17-11 at 11.) As defendant correctly notes, there is no evidence that these doctors had an ongoing relationship with plaintiff. (Paper No. 17-1 at 11.) Accordingly, these physicians do not meet the definition of a "treating physician." 20 C.F.R. §§ 404.1502, 416.902. In any event, even if Dr. Mankad's and McGibbon's were plaintiff's "treating physicians," the ALJ concluded that their opinions are inconsistent with other substantial evidence. (R. at 17.) Since, as discussed above, a treating physician's opinion is not entitled to controlling weight if it is inconsistent with other substantial evidence, the ALJ's rejection of their opinions was proper even if they were plaintiff's "treating physicians." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

reviewed the evidence in the record, including plaintiff's medical reports, and completed a "Mental Residual Functional Capacity Assessment" form. (R. at 177-94.) Based on his review of the evidence, Dr. Sokas determined that plaintiff has "moderate" limitations in eight categories, including the ability to "understand and remember detailed instructions," "maintain attention and concentration for extended periods," and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (R. at 177-78.) Dr. Sokas concluded that plaintiff has "ADHD and borderline intellectual functions, which cause moderate restrictions of concentration, taske [sic] persistence, work-related social skills, and ability to set appropriate goals," and could perform "routine work with limited interpersonal interaction." (R. at 179.)[2]

In addition, the ALJ relied on: (1) the fact that plaintiff maintained jobs for approximately 20 years; (2) evidence that

---

[2] While the ALJ did not expressly cite or discuss Dr. Sokas' findings in explaining his RFC determination, it is clear that the ALJ nonetheless relied on this evidence. First, the ALJ's conclusion that plaintiff retains the RFC to perform "routine unskilled tasks" so long as she is limited to perform "no more than minimal contact with coworkers, supervisors or the public" is virtually identical to Dr. Sokas' conclusion that plaintiff could perform "routine work with limited interpersonal interaction." Second, the ALJ expressly cited the "State Agency's ultimate decision that the claimant is not 'disabled'" in support of his RFC conclusion and Dr. Sokas' opinion was a key component of the Maryland DDS' decision to deny her benefits. (R. at 18.) Third, the ALJ summarized Dr. Sokas' findings as part of his step two determination that plaintiff has severe impairments. (R. at 13.)

11

plaintiff independently performs many activities of daily living, such as driving, grocery shopping, and cleaning; (3) plaintiff's report that "she generally gets along with people"; and (4) the lack of any evidence in the record of episodes of decompensation. (R. at 16-18.)  The court concludes that, taken together, this constitutes substantial evidence to support the ALJ's conclusion that plaintiff retains the RFC to perform "routine unskilled tasks" so long as she is limited to "no more than minimal contact with coworkers, supervisors or the public."  See Smith v. Chater, 959 F. Supp. 1142, 1146-47 (W.D. Mo. 1997) (substantial evidence supported ALJ's finding that claimant was able to work where claimant's testimony and his father's statements in record indicated that claimant had acquired poor work record for reasons unrelated to any alleged mental disability and that claimant's borderline intellectual ability was lifelong condition which had not prevented him from functioning in number of job settings).  Accordingly, the court concludes that the ALJ did not err in formulating plaintiff's RFC.[3]

---

[3] Plaintiff also argues in her Motion for Summary Judgment that the ALJ erred at step five because his hypothetical question to the vocational expert "minimized the Claimant's condition in clear opposition to the findings of all three of the treating and examining doctors."  (Paper No. 13-1 at 10-12.)  This argument, however, is solely premised on plaintiff's assertion that the ALJ erred in determining plaintiff's RFC and, therefore, is identical to plaintiff's first argument.

## IV. Conclusion

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (Paper No. 13), and grants defendant's Motion for Summary Judgment (Paper No. 17). A separate Order shall issue.


Date: 07-23-10                              /s/
                                      Beth P. Gesner
                                      United States Magistrate Judge